**REPUBLIC MORTGAGE INSURANCE COMPANY and RMIC Corporation, Plaintiffs,**

v.

**BRIGHTWARE, INC., Defendant.**

No. 1:98CV00304.

United States District Court,
M.D. North Carolina.

Feb. 5, 1999.

Ellis B. Drew, III, Winston–Salem, NC, for plaintiffs.

Daniel R. Taylor, Mark A. Stafford, Winston–Salem, NC, for defendant.

## ORDER

TILLEY, District Judge.

Pursuant to 28 U.S.C. § 1404(a), and for the convenience of parties and witnesses, in the interest of justice, it is ORDERED that the above-named case be TRANSFERRED

to the Northern District of California, and if appropriate, be joined with a suit currently filed in that court by Brightware against RMIC.

## MEMORANDUM OPINION

Defendant Brightware, Inc. ("Brightware") moves for dismissal of this action, pursuant to Fed.R.Civ.P. 12(b)(1–3) and (6) and 28 U.S.C. § 1406(a), or in the alternative, for transfer of this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California. (Def.'s Mot. Dismiss or Alternatively, Transfer [Doc. # 4].) For the reasons set forth below, the Motion to Transfer is GRANTED.

### I.

Plaintiff Republic Mortgage Insurance Company is a private mortgage insurance company with its headquarters and principal place of business in Winston–Salem, North Carolina. Plaintiff RMIC Corporation is a North Carolina corporation with its headquarters and principal place of business in Winston–Salem, North Carolina, as well. RMIC "provides various support services and management assistance to Republic Mortgage Insurance Company." (Notice Removal [Doc. # 1] Ex. A ("Complaint"), ¶ 2.) The Court will refer to the Plaintiffs collectively as "RMIC," as the Plaintiffs did in the Complaint. (*See id.*) Brightware is a Delaware corporation with its headquarters and principal place of business in California.

In April 1997, the parties entered into two agreements, a "Consulting Services Agreement" and a "Product License Agreement" (collectively, the "Agreements"). Both of these Agreements contain a choice-of-law provision as well as a "forum-selection" clause:

> This Agreement shall be governed by the laws of California applicable to contracts wholly executed and wholly to be performed within the State of California, excluding its choice of laws, rules or venue, and any actions relating to this Agreement shall be brought forth in San Francisco, California.

(*See* Hiser Aff. [Doc. # 9], Ex. A, Product License Agreement, ¶ 12.1; *Id.*, Ex. B, Consulting Services Agreement, ¶ 10.4.)

Problems arose between the parties regarding the other's performance of the obligations mandated by the Agreements. On March 13, 1998, RMIC initiated an action against Brightware in the North Carolina General Court of Justice, Superior Court Division, Forsyth County. RMIC made eight claims for relief: (1) breach of contract; (2) rescission; (3) anticipatory repudiation; (4) negligent misrepresentation; (5) refund of license fees; (6) declaratory judgment pursuant to N.C.Gen.Stat. § 1–253 *et seq.;* (7) unfair and deceptive trade practices, pursuant to N.C.Gen.Stat. § 75–1.1; and (8) attorneys' fees, pursuant to N.C.Gen.Stat. § 75–16.1. (Compl., at 3–8.). Brightware timely removed the action to this Court. Now, based on the forum-selection clauses in the Agreements, Brightware has moved for dismissal, or in the alternative, for transfer of the action to the Northern District of California.

### II.

Subject matter jurisdiction is proper in this Court, as this is a diversity case in which the parties are citizens of different states, and the amount in controversy exceeds $75,-000. (*See* Compl., at 8; *see also* 28 U.S.C. § 1332.) Venue also is proper, for according to the allegations of the Complaint, a substantial part of the events giving rise to RMIC's claims occurred in Winston–Salem, North Carolina, which is located in the Middle District of North Carolina. *See* 28 U.S.C. § 1391(a)(2). It is not necessary to determine whether this Court has personal jurisdiction over Brightware in order to transfer venue pursuant to 28 U.S.C. § 1404(a). *See Datasouth Computer Corp. v. Three Dimensional Techs., Inc.,* 719 F.Supp. 446, 450 (W.D.N.C.1989).

### III.

Federal law, specifically 28 U.S.C. § 1404(a), governs the decision whether to give effect to the parties' forum-selection clause and transfer this case to a court in San Francisco, California. *Stewart Org., Inc.*

v. Ricoh Corp., 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As the Supreme Court noted in *Stewart*:

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.

*Stewart*, 487 U.S. at 29, 108 S.Ct. 2239 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

■ Before the "case-specific factors" are balanced under § 1404(a), the Court must first determine whether the forum-selection clause is valid under federal law, and therefore is able to be considered as a factor under § 1404(a). In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court concluded that, under federal common-law, forum-selection clauses are *prima facie* valid, and should be enforced unless the resisting party shows "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. 1907. There has been no evidence to suggest fraud or overreaching in the inclusion of the forum-selection clauses in these Agreements, and RMIC has made no complaint of such. RMIC emphasizes that **"no negotiations," "no bargaining,"** and **"no discussions"** took place over either the forum-selection clause or the choice-of-law provision. (Pls.' Br.Opp. [Doc. # 8], at 5 (emphasis in original).) However, RMIC cannot now avoid a provision of a freely-entered contract because it did not consider the provision carefully at the time the Agreements were negotiated. Despite RMIC's implication to the contrary, the Agreements were far from an adhesion contract in which these provisions were forced upon an unsuspecting consumer.[1] Rather, these Agreements were negotiated between two sophisticated business entities.

The party seeking to void the clause should "clearly show that enforcement would be unreasonable and unjust." *Id.; Nizam's Inst. of Med. Sciences v. Exchange Tech., Inc.*, No. 93–2196, 1994 WL 319187, at *3 (4th Cir.1994) (unpublished disposition). One aspect of this standard is whether the choice of forum is "inconvenient." *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 317 (4th Cir.1982). Here, the choice of San Francisco in the Agreements does not meet the standard necessary to be deemed "inconvenient." The party challenging the clause must demonstrate "that the specified forum is so 'seriously inconvenient,' that he would be deprived of an opportunity to participate in the adjudication." *Id.* (quoting *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361, 365 (S.D.N.Y.1975)). While San Francisco may be a more distant forum for RMIC than North Carolina, distance and expense are not the yard-sticks of inconvenience in an agreement that is freely negotiated such as this one: "[w]hatever 'inconvenience' [RMIC] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Bremen*, 407 U.S. at 17–18, 92 S.Ct. 1907. Rather, a forum-selection clause should be invalidated on the grounds of inconvenience "only if enforcement would effectively deprive [a] party of his day in court." *Id.* at 18, 92 S.Ct. 1907. RMIC has made no such showing of "grave" or "serious" inconvenience here. *See id.*

In addition to "inconvenience," "[f]orum selection clauses have been found to be 'unreasonable' and therefore have not been enforced when the selected forum is one with which neither party to the contract had a connection." *Medical Legal Consulting Serv., Inc. v. Covarrubias*, 648 F.Supp. 153, 157 (D.Md.1986) (citing Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3803 n. 24 at

---

1. In addition to defying common sense, such an implication also is undermined by an affidavit from a Brightware Vice President, who asserts that RMIC brings in $250 million in revenue per year from its nationwide mortgage insurance business. (Barfus Aff. [Doc. # 7] ¶ 3.)

23–24 (1986)). This factor does not prohibit consideration of the forum-selection clause in this case. Although RMIC may not have had much, or any, connection to San Francisco, all that is required for a freely-negotiated forum-selection clause to be reasonable is that *one* of the parties to the agreement have a connection to their contractual choice of forum. *See id.* at 157. Brightware clearly is connected to California, and, after it has freely negotiated for the right to demand suit in California, it would not be appropriate for this Court to upset the balance of its bargain. Therefore, the forum-selection clauses in these Agreements are valid under federal law.

While "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in [this Court's] calculus" of whether to transfer the case pursuant to § 1404(a), *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239, the clause will "receive neither dispositive consideration . . . nor no consideration, but rather the consideration for which Congress provided in § 1404(a)," *id.* at 31, 108 S.Ct. 2239. Specifically, this Court also must address such issues "as the convenience of a [San Francisco] forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Id.* at 29, 108 S.Ct. 2239. In addition to these factors, which relate to the parties' private ordering of their affairs, the Court "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'interest of justice.' " *Id.* at 30–31, 108 S.Ct. 2239.

Furthermore, courts consider and weigh the following specific, judge-made factors when ruling on a § 1404(a) motion to transfer: "(1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative

advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws." *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 519, 527 (M.D.N.C.1996) (citing *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.,* 719 F.Supp. 446, 450–51 (W.D.N.C.1989)).

Through briefs and charts, both sides in this dispute have provided their view as to the weight and outcome of each of these factors, and the result is, at best, inconclusive. The parties have agreed that the following factors are neutral as to which forum—North Carolina or San Francisco—would be preferable: (5) enforceability of judgment; (8) court congestion; and (11) avoidance of unnecessary problems with conflicts of law. Moreover, the Court finds that three other factors—(2) relative ease of access to sources of proof; (6) relative advantages and obstacles to a fair trial; and (7) expeditious and inexpensive trial—also are not determinative in this matter. All three of these factors relate to the cost of adjudicating the matter in a distant forum, where evidence and witnesses may not be as accessible. In this case, one party will inevitably have to bear the cost of traveling far from home. Therefore, these factors do not help determine which forum is proper.

The third factor—the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses—also does not prefer one forum over the other. Indeed, the choice of California will not prejudice RMIC in this regard because Brightware has stated that it will make all of its employees available for trial in California, (Def.'s Reply Br. [Doc. # 10], at 7), and RMIC can bring its witnesses to California without compulsory process. Brightware has not expressed concern about calling RMIC witnesses from North Carolina who are not

called to testify by RMIC. Furthermore, the fourth factor—a view of the premises—does not seem applicable in this contract case.

Relying on North Carolina Gen.Stat. § 22B–3, RMIC asserts that factors nine and ten—local interest in having local controversies settled at home and appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action—favor North Carolina as the forum. North Carolina Gen. Stat. § 22B–3 declares that "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable."[2] North Carolina certainly would have interest in this controversy, as it appears from the Complaint that most of the performance under the Agreements occurred in this state. However, California's interest also must be considered, and it likely has an interest in a dispute in which a corporation that has its principal place of business in California allegedly is not paid for its services. Moreover, the Agreements call for California law to govern the contract claims that predominate this Complaint—a provision that would be enforced by North Carolina courts, *see Tanglewood Land Co. v. Byrd,* 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980) (holding that North Carolina courts will give effect to contracting parties' agreement to have a given jurisdiction's substantive law govern the interpretation of the contract). A district court in California certainly would have more experience and expertise in applying California contract law than this Court. Thus, the balancing of these two factors indicates that transfer to California would be appropriate.

■ The above factors in the § 1404(a) balancing test give only a slight advantage to California, and normally would not be sufficient to transfer the case. The first factor—the plaintiffs' initial choice of forum—would seemingly favor North Carolina, because that is where RMIC originally filed this action. However, these factors must be viewed with reference to "the parties' expressed preference" for California and "in light of the forum-selection clause." *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239. When a forum-selection clause is part of the balancing, as *Stewart* requires, it is more logical to consider the plaintiff's initial choice of forum to be the forum that is contractually agreed upon. As the Eleventh Circuit stated shortly after the Supreme Court's *Stewart* decision:

> The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. [Cit.] Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient. When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered.
>
> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.

*In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989). Such an analysis applies the appropriate weight to the forum-selection clause in the § 1404(a) balancing. *See Stewart,* 487 U.S. at 29, 108 S.Ct. 2239 ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.").

Thus, by giving full consideration to the forum-selection clause in the § 1404(a) bal-

---

**2.** North Carolina General Statute § 22B–3 was not considered substantively to void this contract because, as the Supreme Court directly held in *Stewart,* when a federal district court considers a motion to transfer under a federal statute, such as 28 U.S.C. § 1404(a), federal common law, not state law, will determine the effect of a forum-selection clause. *See Stewart,* 487 U.S. at 28, 108 S.Ct. 2239.

ancing, it is clear that California is the more appropriate forum for this dispute. The most closely analogous case in the Fourth Circuit is *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253 (4th Cir.1991), in which the Court applied the *Stewart* standard to a motion to transfer a case involving a forum-selection clause. In *Brock*, the Court stated:

> Here, the convenience of the witnesses favors neither Texas nor Virginia, as numerous witnesses live in each state. In addition, the convenience of the parties favors neither state. No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away. The one factor which weighs heavily in favor of Virginia is the forum selection clause included in the contract the parties entered into: the clause provides that the forum will be Virginia.

> The *Stewart* Court stated that forum selection clauses "should receive neither dispositive consideration" nor "no consideration ... but rather the consideration for which Congress provided in § 1404(a)." [Cit.] Here, the forum selection clause is dispositive only because no other factors tip the balance under a careful § 1404(a) analysis.

*Id.* at 1258. As in *Brock*, the court in which this matter should be resolved is the court upon which the parties agreed in their Agreements. That court is located in San Francisco, California.

## IV.

For the reasons stated above, Brightware's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is GRANTED. In the Order filed contemporaneously with this Memorandum Opinion, it will be ORDERED that this case be transferred to the Northern District of California, and if appropriate, be joined with a suit currently filed in that court by Brightware against RMIC.