TRIAD SYSTEMS FINANCIAL CORPORATION, Plaintiff and Counterclaim Defendant,

v.

STEWART'S AUTO SUPPLY, INC.; Reggie Stewart; Ellis Murphree, Defendants, Counterclaimants and Third–Party Plaintiffs,

v.

Cooperative Computing, Inc., (formerly known as Triad Systems Corporation), Third–Party Defendant.

No. CivA 98–AR–2015–S.

United States District Court,
N.D. Alabama,
Southern Division.

April 29, 1999.

---

Susan Salonimer Wagner, Ellen E Henderson, Frederick M Thurman, Jr, Berkowitz Lefkovits Isom & Kushner, Birmingham, AL, Samuel W Gordon, Hemar Gordon & Rousso, Encino, CA, for Triad Systems Financial Corporation, a corporation, plaintiff.

J Fred Wood, Jr, Christopher A Bottcher, Dominick Fletcher Yeilding Wood & Lloyd, Birmingham, AL, Stephen K Griffith, D Todd McLeroy, Knight & Griffith, Cullman, AL, Bruce W Blakely, Silen & Flaxman, Mill Valley, CA, for Stewart's Auto Supply, Inc., Reggie Stewart, Ellis Murphree, defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

For reasons which will hereinafter become apparent, this court has taken its time in the preparation of an answer to the provocative question of what constitutes the proper forum for the above-entitled case.

The complaint was originally filed in the Superior Court of the State of California for the County of Alameda. Plaintiff, Triad Systems Financial Corporation ("TSFC"), sued defendants, Stewart Auto Supply, Inc. ("Stewart Auto"), Reggie Stewart ("Stewart"), and Ellis Murphree ("Murphree"), for an alleged breach of an equipment lease by Stewart Auto and alleged breaches of personal guarantees of that lease by Stewart and Murphree. TSFC is a California resident. Defendants are residents of the Northern District of Alabama. Defendants removed the case to the United States District Court for the Northern District of California premised on diversity of citizenship. They thereupon moved for a dismissal pursuant to Rule 12(b)(2) F.R.Civ.P., or, in the alternative, for a transfer of the case to Alabama pursuant to 28 U.S.C. § 1404(a). They challenged the long-arm jurisdiction of the California court and, as a back stop, asserted *forum non conveniens*. The California court denied defendants' motion to dismiss, finding the existence of more than sufficient facts upon which to base *in personam* jurisdiction. However, the California court ordered the requested transfer, memorializing its oral order as follows:

> The Court found that, for the convenience of witnesses and the parties, and in the interest of justice, this case should properly be tried in the United States District Court for the Northern District of Alabama. Accordingly, the Court granted defendants' motion to transfer the case to the District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a).

*Order* (N.D.Cal. July 31, 1998) (transferring case).

TSFC successfully resisted defendants' motion to dismiss but unsuccessfully resisted the requested transfer. TSFC used the following language to object:

> 4. Suit was filed in California based upon a Contractual Forum Selection Agreement. Defendant has filed a Motion to Dismiss or in the alternative, a Motion to Transfer on Grounds of Inconvenient Forum.
>
> 5. Plaintiff believes that the Motion to Dismiss and the Motion to Transfer based upon Forum Non Conveniens should be denied because of many reasons, including the following:
>
> a. The forum-selection clause is enforceable and no grounds exist to negotiate the chosen venue.
>
> b. The valid Forum Selection Clause precludes granting the Forum Non Conveniens Motions.
>
> c. Any claims against Triad Systems Corporation are subject to mandatory

arbitration before the American Arbitration Association in Alameda County.

*FORUM CLAUSES ARE GENERALLY UPHELD UNDER BOTH CALIFORNIA AND FEDERAL LAW.*

*Pl.'s Mem. in Opp. to Mot. Dismiss* at 2. (emphasis in original).

In its written opinion, the California court made no mention of the provision of the contract that designates the law of California as controlling and that concedes jurisdiction in a state or federal court in California for litigating any and all disputes between the parties. That provision is as follows:

> **25. GOVERNING LAW. This Lease shall in all respects be governed by, and construed in accordance with, the laws of the State of California, including all matters of construction, validity and performance. You [Stewart's Auto] agree to submit to the jurisdiction of the state and/or federal courts in the State of California. This Lease was executed in the State of California (by TSFC having countersigned it in California) and is to be performed in the State of California by reason of the payments required to be made to TSFC in California.**

*Ex. L, to Pl.'s Mem. in Opp. to Mot. to Dismiss.*

The individual defendants, Stewart and Murphree, executed purported guaranty agreements in which each "unconditionally guarantees to TSFC all of the obligations of Customer [Stewart Auto]."

After the case arrived in this court, Stewart Auto, Stewart and Murphree filed a counterclaim against TSFC and a third-party complaint against Triad Systems Corporation ("TSC"), claiming, *inter alia*, that TSC is the parent corporation of TSFC. As against TSC, cross-claimants invoked this court's diversity jurisdiction and served TSC, a non-Alabama corporation, claiming that TSC, as TSFC's *alter ego*, and TSC, together breached the subject equipment lease, committed fraud in the inducement of the lease and violated federal anti-trust laws. The counterclaim and third-party complaint was responded to by TSFC and TSC (now known as Cooperative Computing Inc.), hereinafter ("CCI"). This response consists only of an application for a stay pending mandatory arbitration. No "answers" have been filed to the counterclaim or to the cross-claim. TSFC's and CCI's application for stay invokes the arbitration clause contained in a Master Customer Agreement executed by and between TSC and Stewart Auto. That agreement provides:

> 13.7 *Arbitration.* **Any claim, dispute or controversy arising out of or relating to this Agreement, or the alleged breach or termination thereof, will be settled by arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association, as then in effect, except as provided in subparagraphs (a)–(d) below. You understand that by agreeing to arbitrate disputes, you are waiving your rights to a jury trial.**

> (a) Unless the parties agree otherwise, any such arbitration shall be held in Alameda County, California, before one arbitrator who will be selected by mutual agreement of the parties; if agreement is not reached on the selection of an arbitrator within fifteen (15) days after receipt of a demand for arbitration by the other party (the "Initial Selection Period"), then each party will have fifteen (15) days from the expiration of the Initial Selection Period to select an arbitrator. The two arbitrators will select a third neutral arbitrator and the three arbitrators will arbitrate the dispute. If either party does not timely select an arbitrator, the arbitrator selected by the other party will arbitrate the dispute.

> (b) The parties will provide each other with production of all requested documents and records reasonably related to the dispute in a manner that will minimize the expense and inconvenience of both parties. Discovery will not include depositions or interrogatories except as

the arbitrator(s) expressly allow(s) on a showing of need.

(c) Costs and fees of the arbitrator(s) will be borne by the non-prevailing party, unless the arbitrator(s) determine(s) otherwise. The award of the arbitrator(s), which may include equitable relief, will be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Any demand for arbitration shall be made in writing and must be made within the period set forth in Section 13.6

(d) Nothing in this Section 13.7 will be deemed as preventing either party from seeking injunctive or equitable relief (or any other provisional remedy) from any court having jurisdiction over the parties and the subject matter of the dispute as necessary to protect the complaining party's Proprietary Rights.

*Ex. M, Pl.'s Mem. in Opp. to Mot. to Dismiss.* (emphasis in agreement).

Although the forum selection clause invoked by plaintiff in California does not contain express words of "exclusivity," designating California as the **only** possible forum, the **arbitration** clause now being invoked by a newly added party in this court makes clear that arbitration, if and when ordered, must be conducted in California unless the parties agree otherwise, and CCI (formerly TSC) clearly does not agree.

Murphree has filed a motion for summary judgment in this court claiming that he was never a guarantor of the subject lease agreement. He seems to have a colorable basis for his contention. This court has not ruled upon TSFG's and CCI's joint motion for a stay, nor upon Murphree's motion for summary judgment. Instead, the court has informed the parties that it will treat TSFG's earlier California response to defendants' motion to transfer, together with TSFG's and CCI's joint motion to recognize binding arbitration, as a motion to re-transfer the case to the United States District Court for the Northern District of California.

Stewart Auto, Stewart, and Murphree have filed a brief in opposition to re-transfer. TSFG and CCI insist that all issues between the parties must be arbitrated in California in accordance with the arbitration clause. This contention has more than colorable merit. The Federal Arbitration Act is powerful medicine.

Anything or anybody named "Stewart" is "snake-bit" when it comes to forum selection clauses in this court. The Stewart clan still has not learned to avoid signing contracts that contain forum selection clauses, especially if those clauses are going to end up in this court. The first "Stewart" ("Stewart Organization, Inc.") that brought such a problem to this court went from this court to the Eleventh Circuit, on to the Supreme Court, back to the Eleventh Circuit, back to this court, back to the Eleventh Circuit, back to this court and ended up in a federal district court in New York where the forum selection clause sent it. The sad saga is told in more gory detail than most readers would appreciate in *Stewart Org., Inc. v. Ricoh Corp.,* 779 F.2d 643 (11th Cir.1986), *reh'g granted and op. vacated by* 785 F.2d 896 (11th Cir.1986), *on reh'g,* 810 F.2d 1066 (11th Cir.1987), *cert. granted,* 484 U.S. 894, 108 S.Ct. 225, 98 L.Ed.2d 184 (1987), *aff'd and remanded,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), *on remand,* 855 F.2d 762 (11th Cir.1988), *on remand,* 696 F.Supp. 583 (N.D.Ala.1988), *mandamus granted, In re Ricoh Corp.,* 870 F.2d 570 (11th Cir.1989), *reh'g denied,* 877 F.2d 975, *Stewart Org. v. Ricoh Corp.,* 713 F.Supp. 1419 (N.D.Ala.1989). This court will not describe the hard lesson learned from these sequential decisions, except to say that the lesson was reluctantly applied by this court in the very next case brought to it by a plaintiff who again carried the name "Stewart." In *Stewart v. Dean–Michaels Corp.,* 716 F.Supp. 1400 (N.D.Ala. 1989), this court said:

Plaintiffs [including Mr. Stewart] here strive to convince this court that they come within some exception recognized

by the Eleventh Circuit in *In re Ricoh Corporation.* Not having been told by the Eleventh Circuit what, if any, exceptional circumstances would justify choosing a forum other than the forum provided in a forum selection clause, this court is unconvinced that either set of plaintiffs comes within any exception.

716 F.Supp. at 1401–1402.

In *Dean–Michaels* this court transferred Mr. Stewart's case to New York pursuant to a non-exclusive jurisdictional clause. That clause, very much like the clause in the instant case, provided:

This agreement shall in all respects be governed by the laws of the State of New York (U.S.A.). The parties hereby agree that any dispute relating to the services sold hereunder shall be subject to the jurisdiction of the courts within the State of New York.

716 F.Supp. at 1401.

As recently as March 31, 1999, this court recognized and enforced the strict Eleventh Circuit rule that a forum selection clause constitutes the overriding consideration, which virtually eliminates other *forum non conveniens* considerations. *See Skyline v. RDI/Caesars Riverboat Casino,* 44 F.Supp.2d 1337 (N.D.Ala.1999), in which this court sent an inconvenienced Alabama plaintiff to Indiana. The transfer in *Skyline* was ordered without reference to, or reliance upon, *Florida Polk County v. Prison Health Services, Inc.,* 170 F.3d 1081 (11th Cir.1999), because this court was then unaware of *Florida Polk County,* which was only decided on March 26, 1999, and not yet received in the advance sheet mail. In *Florida Polk County,* the Eleventh Circuit implicitly affirmed this court's reasoning in *Dean–Michaels* by holding:

FACT and the Sheriff sued PHS in the circuit court of Polk County because the Sheriff's contract with PHS vested "jurisdiction regarding the rights and obligations of either party under this Agreement and all litigation resulting therefrom ... in the ... [circuit court of] Polk County, Florida."[4]

[4]. The provision further stated that "all of the rights and obligations of the PARTIES hereto shall be governed both procedurally and substantively by and construed according to the Laws of the State of Florida."

170 F.3d 1081, 1083–84.

The lower court, which was affirmed in *Florida Polk County,* had enforced a forum selection clause by remanding the case to the Circuit Court of Polk County from whence it had been removed. After quoting from the written agreement between the parties, the Eleventh Circuit held:

Turning to PHS's argument that the indemnity agreement's forum-selection clause is permissive, rather than mandatory, we conclude that construing the clause as permissive would render it meaningless.

\* \* \* \* \* \*

It is a venerable principle of contract law that the provisions of a contract should be construed so as to give every provision meaning. *See Maccaferri Gabions, Inc. v. Dynateria Inc.,* 91 F.3d 1431, 1439 (11th Cir.1996) ("An interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions meaningless." (citations and internal quotation marks omitted)); *Jameson v. Mutual Life Ins. Co. of N.Y.,* 415 F.2d 1017, 1020 (5th Cir.1969) ("An interpretation which gives a reasonable meaning to all provisions is preferable to one which leaves a portion of the [contract] useless, inexplicable or creates surplusage."). To read the forum-selection clause as permissive would render it surplusage, because the circuit court of Polk County—for the reasons stated above—already had the authority to entertain any controversy arising out of the contract. To read the clauses as mandatory—thus requiring all litigation arising out of the contract to take place in the circuit court of Polk County—gives the provision meaning. If we were to accept PHS's argument, therefore, we would be forced to disregard a

fundamental principle of contract law. We refuse to do so.

In sum, we uphold the district court's decision to enforce the forum-selection clause.

170 F.3d 1081, 1083–84 (footnotes omitted). To like effect is *Snapper, Inc. v. Redan*, 171 F.3d 1249 (11th Cir.1999), decided on April 5, 1999. It can quickly be discerned from a reading of *Florida Polk County* and *Snapper, Inc.* that the Eleventh Circuit does not treat a forum selection clause that simply **concedes** jurisdiction in a particular forum any differently from a clause that provides a place of **exclusive** jurisdiction, particularly, if the place of conceded jurisdiction is actually selected by the plaintiff. The removal of the present case from a California state court to the federal court is justified under *Florida Polk County* and *Snapper, Inc.* by the fact that in the instant forum selection clause defendants agree to jurisdiction in "the state and/or federal court in the State of California."

In its order of transfer, the California court did not speak to the effect, if any, of this particular forum selection clause on the choice of forum as between California and Alabama. Neither did that court discuss the deference to be accorded a plaintiff's choice of forum, especially when in *personam* jurisdiction admittedly exists. The Ninth Circuit may or may not construe the Supreme Court's *Stewart Organization* decision as the Eleventh Circuit has construed it. This court, however, sits within easy reach of the Eleventh Circuit, while the Ninth Circuit is far away.

 It is not, however, the Eleventh Circuit alone which influences this court to re-transfer this case. A more persuasive reason for revisiting, without undertaking to review, as would an appellate court, the transfer order of the California court, is the sudden but powerful rearing of the ugly (beautiful?) head of the arbitration clause, a clause neither invoked in, nor considered by, the California court. This clause unambiguously calls for arbitration and requires that the arbitration proceeding be conducted in California. Further-

more, the clause provides that the arbitrator's decision must be enforced, if at all, by a California court. This new, highly significant procedural fact triggers reference to the very recent case of *Bill Harbert Constr. Co. v. Cortez Byrd Chips, Inc.*, 169 F.3d 693 (11th Cir.1999), in which the Eleventh Circuit, on March 9, 1999, reaffirmed the proposition that the Federal Arbitration Act's "venue provision places venue **exclusively** within the district court in and for the district within which the arbitration award was made." *Id.* at 694 (emphasis supplied). In other words, if the instant controversy is, as is likely, submitted to arbitration in Alameda, California, the arbitration award, both according to the contract and according to the Eleventh Circuit, can only be enforced by the United States District Court for the Northern District of California, where Alameda is located. It would be the ultimate anomaly for this court to stay consideration of this controversy pending arbitration in California in order to await an arbitration award that this court cannot enforce.

In *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court, speaking through Justice Stewart (there's that name "Stewart" again), held:

> An agreement to arbitrate before a specified tribunal is, in effect, **a specialized kind of forum-selection clause** . . .

94 S.Ct. at 2457 (emphasis supplied).

A court in the state originally chosen as the forum by plaintiff here has, as of yet, not had an opportunity to consider the "specialized kind of forum-selection clause" now invoked by another party which was not a party at the time the transfer was ordered.

Although not binding, this court notes that a district court in North Carolina recently accorded great weight to a forum selection clause that designated California as the forum. The forum clause there tipped the balance in favor of transferring

an action for breach of a contract by and between two North Carolina corporations and a California corporation in favor of a transfer of the case to California. *See Republic Mortg. Ins. Co. v. Brightware, Inc.*, 35 F.Supp.2d 482, 486–87 (M.D.N.C. 1999). The North Carolina court considered the forum selection clause to be a highly significant fact, whereas the Eleventh Circuit treats such clauses as so determinative that all other facts, such as the convenience of parties and witnesses, pale to insignificance. The contractual choice becomes the irreversibly predominating fact. If the Eleventh Circuit were called upon to review directly the California court's decision to transfer this case, over the choice of forum provided by contract, and contrary to plaintiff's choice of that same forum, this court has no doubt that the California court would be reversed. The Sixth Circuit's interesting discussion of the **indirect** review by the court of appeals in the circuit of a **transferee** court, of an order entered by a **transferor** court located in another circuit can be found in *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131 (6th Cir.1991). It was this court's transfer order in *Dean–Michaels* that was there being vicariously reviewed by the Sixth Circuit. The Seventh Circuit now may get a chance to look over this court's shoulder in *Skyline*, in which this court sent an Alabama plaintiff to Indiana.

If the forum selection clause in *Stewart Organization* had pointed to Alabama instead of to New York as the forum for the Alabama plaintiff, that case would have never become a leading case. The plaintiff would have picked the very forum for which it contracted, as the California plaintiff did in the instant case, and there would have been nothing to get excited about. If a different scenario had appertained in *Dean–Michaels* and *Skyline*, those cases would never have been transferred to other jurisdictions.

██ This court fully realizes that the re-transfer of a case is, and should be, a highly unusual event. A re-transfer should not be ordered unless the circum-

stances are exceptional. The applicable principles of law were clearly enunciated by the Fifth Circuit in *In re Cragar Industries, Inc.*, 706 F.2d 503 (5th Cir.1983), as follows:

Certainly the decision of a transferor court should not be reviewed again by the transferee court. *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C.Cir. 1974) (*en banc*). Such an independent review would implicate those concerns which underlie the rule of repose and decisional order we term the law of the case. We have said: "If the motion to transfer is granted and the case is transferred to another district, the transferee-district should. accept the ruling on the transfer as the law of the case and should not re-transfer **'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.' "** *United States v. Koenig*, 290 F.2d 166, 173 n. 11 (5th Cir.1961), aff'd, 396 U.S. 121, 90 S.Ct. 396, 24 L.Ed.2d 305 (1969). Failure to abide the original transfer order contains the additional potential mischief of tossing cases back and forth to the detriment of an adjudication of the underlying merits of the case and respect due sister courts.

**It does not follow, however, that a transferee court is powerless to act where the original purposes of the transfer have been frustrated by an unforeseen later event.** *See* 15 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3846 (1976). **When such unanticipatable post-transfer events frustrate the original purpose for transfer, a return of the case to the original transferor court does not foul the rule of the case nor place the transferee court in a position of reviewing the decision of its sister court. It, instead, represents a considered decision that the case then is better tried in the original forum for reasons which became known after the original transfer order.** In sum, we decline to adopt a per se rule

forbidding a return of a transfer by the transferee court of a transferred case. 706 F.2d at 505 (emphasis supplied).

Not only have the Eleventh Circuit's decisions in *Florida Polk County* and *Bill Harbert Construction* intervened since the California court transferred this case to this court, but at the time of the transfer it was unanticipated that the arbitration clause would become involved, doubling or tripling the pull toward California as the proper forum. Because of this new and critical circumstance, this court is not called upon to express itself on whether the transfer order was "manifestly erroneous." The new procedural facts call for a *de novo* consideration of the forum issue. That reconsideration leads this court to a separate order of re-transfer.