PERGO, INC., and Pergo (Europe) AB, Plaintiffs

v.

ALLOC, INC., Armstrong World Industries; Berry Finance NV; Shaw Industries, Inc.; and Witex USA, Inc. Defendants

Nos. 02 CIV. 4840(JGK), 02 CIV. 6408(JGK).

United States District Court, S.D. New York.

May 3, 2003.

Edward V. Eilardi, Daniel A. Devito, Todd Joseph Tiberi, Skadden, Arps, Slate,

Meagher & Flom, LLP, New York City, for Pergo, Inc., Pergo (Europe) AB.

Alan Heblack, John T. Brennan, Snitow Kanfer Holtzer & Millus, LLP, New York City, for Armstrong World Industries.

John Michael Dimatteo, Wilkie Farr & Gallagher, New York City, Eugene Gelernter, Patterson Belknap, New York City, William F. Long, Needle & Rosenberg, PC, Atlanta, GA, for Shaw Industries.

Norman H. Zivin, Cooper & Dunham, LLP, New York City, Dale Lischer, Elizabeth G. Borland, Smith, Gambrell & Russell, LLP, Atlanta, GA, for Witex USA, Inc.

James D. Jacobs, Baker & McKenzie, New York City, Daniel J. O'Connor, David I. Roche, Shima S. Roy, Chicago, IL, for Alloc, Inc.

## OPINION AND ORDER

KOELTL, District Judge.

These are two actions brought by Pergo, Inc. and Pergo (Europe) AB (collectively "Pergo" or "the plaintiffs") alleging the infringement of two patents for mechanically-locking laminate flooring panels and the methods of installing such panels, U.S. Pat. No. 6,397,547, B1 (the " '547 patent") and U.S. Pat. No. 6,421,970 (the " '970 patent").[1] Laminate flooring panels are flooring panels or tiles that can be assembled without the use of glue. The plaintiffs brought actions alleging infringement of both the '547 patent ("the 4840 action") and the '970 patent (the "6408 action") against Alloc, Inc, ("Alloc"), Armstrong World Industries ("Armstrong"), and Berry Finance NV ("Berry Finance") (collectively "the Berry defendants"), as well as against Shaw Industries, Inc. ("Shaw"), and Witex USA, Inc.[2] ("Witex"). After the

---

1. Although the plaintiffs filed two separate patent actions, the cases were consolidated for all pre-trial purposes by an Order dated January 8, 2003.

2. Mohawk Industries was also originally named as a defendant in both actions, but claims against it were dismissed without prejudice, upon consent, pursuant to an Order dated November 25, 2002.

two cases were consolidated for pre-trial purposes, the defendants brought a series of motions.

The Berry defendants brought a motion pursuant to Fed.R.Civ.P. 20(a) to sever the claims brought against them from the claims of the remaining defendants, and to transfer the claims against them to the Eastern District of Wisconsin. In this motion, Alloc also moved, in the alternative, to dismiss or stay the action against it on the grounds that it had first filed an action concerning the same factual issues in the Eastern District of Wisconsin.

Shaw brought a similar motion, moving pursuant to Fed.R.Civ.P. 20(a) to sever the claims brought against Shaw and Witex from the claims brought against the Berry defendants, and to transfer the case against Shaw and Witex to the Northern District of Georgia.[3]

The Berry defendants also moved to dismiss the action alleging infringement of the '970 patent for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), arguing that Pergo lacks standing to sue for infringement of the '970 patent because it is only a licensee of the '970 patent. Alternatively, the Berry defendants have moved to dismiss pursuant to Fed. R. Civ. 12(b)(7) for failure to join an indispensable party, Perstrop Flooring AB, the actual owner of the '970 patent.

Berry Finance brought a separate motion to dismiss both infringement actions, pursuant to Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction, arguing that it lacks sufficient contacts with this forum so as to permit the exercise of jurisdiction under either the New York long-arm statute or the due process clause.

Finally, Armstrong brought a separate motion to dismiss, or in the alternative a motion to stay the action, on the basis of the consumer suit exception, arguing that Armstrong is solely a customer and buyer of the laminate flooring panels at issue, who is indemnified for any alleged infringement by Berry Finance and its subsidiaries, who are Armstrong's suppliers of panels. Consequently, Armstrong argues that because all of the relevant litigation against Berry would effectively resolve the claims against Armstrong, both infringement actions against Armstrong should be either dismissed or stayed.

Because the motions to sever and transfer brought by the Berry defendants and by Shaw and Witex raise threshold issues that could make decisions on the remaining motions unnecessary or inappropriate for this Court, the Court will resolve those motions first and then address the other motions.

## I.

### A.

In order to resolve the motions to sever and transfer, it is necessary to review various facts concerning the parties and the claims of patent infringement.

On June 4, 2002, the U.S. Patent and Trademark Office issued the '547 patent, directed to mechanically-locking laminate flooring panels and the methods of installing such panels. (*See* Exh. A attached to Am. Compl. in 02 Civ. 4840 ("4840 Am. Compl.").) On July 23, 2003, the U.S. Patent and Trademark Office issued the '970 patent, which is also directed to mechanically-locking laminate flooring

---

3. Shaw brought the motion to sever and transfer claims against both Shaw and Witex. Witex has taken no position on the motion. The parties have advised the Court that Witex

may be acquired by Pergo. If that happened, it would not change the analysis of any of the issues on the pending motions.

panels. (*See* Exh. A attached to Compl. in 02 Civ. 6408 ("6408 Compl.").)

Pergo (Europe) AB is alleged to be the sole owner and assignee of both the '547 and '970 patents. (4840 Am. Compl. ¶ 11; 6408 Compl. ¶ 11.) Pergo (Europe) AB is a Swedish Corporation with its principal place of business in Trelleborg, Sweden. (4840 Am. Compl. ¶ 2; 6408 Am. Compl. ¶ 2.) Both patents were allegedly licensed exclusively to Pergo, Inc., a Delaware Corporation with its principal place of business in Raleigh, North Carolina. (4840 Am. Compl. ¶¶ 1, 12; 6408 Compl. ¶¶ 1, 12.)

Both the 4840 Amended Complaint and the 6408 Complaint were filed in this Court on June 24, 2002 and August 13, 2002, respectively, and allege that the defendants, Alloc, Armstrong, Berry Finance, Shaw and Witex, infringed the '547 and '970 patents by "making, using offering for sale, and/or selling within the United States, and/or importing into the United States including within this District, flooring panels." (4840 Compl. ¶¶ 16–21, 24–27; 6408 Compl. ¶¶ 16–21, 24–27.)

Alloc is a Delaware corporation headquartered in Racine, Wisconsin that manufactures and sells laminate flooring products. (Decl. of Claes Wennerth dated Oct. 16, 2002 ("Wennerth Decl.") ¶¶ 1, 3.) Alloc is an indirect subsidiary of Berry Finance N.V. ("Berry Finance"), a holding company headquartered in Belgium that neither manufactures or sells any products. (Decl. of Luc De Clerk dated Dec. 21, 2002 ("Clerk Decl.") ¶¶ 2,3; Wennerth Decl. ¶ 2.) Alloc's manufacturing facility is located at Alloc's headquarters in Racine, Wisconsin, and any documents and records relating to these activities are located there. (Wennerth Decl. ¶ 4.) Alloc's flooring products are sold throughout the United States, although all sales and marketing activities are run out of its headquarters, and all documents relating to those sales

and marketing are located in Racine, Wisconsin. (Wennerth Decl. ¶ 5.) Similarly, testing of its products occurs in Racine and any documents related to those testing and evaluation activities are located in Racine. (Wennerth Decl. ¶ 6.) Alloc has no office or employees in New York. (Wennerth Decl. ¶ 8.)

One of Alloc's major customers is Armstrong World Industries ("Armstrong") a Pennsylvania corporation headquartered in Lancaster, Pennsylvania. (Wennerth Decl. ¶ 9; Aff. of Kevin M. Biedermann ("Biedermann Aff.") sworn to Jan. 13, 2003 ¶ 2.) Pursuant to a Supply and Distribution Agreement dated Oct. 31, 2000, Armstrong acts as a distributor of Alloc's mechanical locking-flooring products, including products under the name Swiftlock and ArmaLock. (Clerk Decl. ¶ 3; Wennerth Decl. ¶ 9; Biedermann Aff. ¶ 5.) The Supply and Distribution Agreement provides for Armstrong to purchase these products from Berry Floor NV and Berry Wood SA, both subsidiaries of Berry Finance, and from Alloc, for sale and distribution throughout the United States. (Biedermann Aff. ¶¶ 5,7; Clerk Decl. ¶¶ 3–4.) Neither Berry Floor NV or Berry Wood SA have an office, employee or agent in New York and are not licensed to do business in New York. (Clerk Decl. ¶ 6.) The products that are made by Alloc and Berry Finance's subsidiaries for sale to Armstrong are manufactured abroad or in Wisconsin. (Wennerth Decl. ¶ 11; Clerk Decl. ¶ 6; Biedermann Aff. ¶ 6.) Armstrong sells these products it buys pursuant to the Supply and Distribution Agreement throughout the United States. (Biedermann Aff. ¶ 7.)

Pergo has also alleged that Shaw, a Delaware corporation with its principal place of business in Georgia, and Witex, a Georgia corporation, with its principal place of business in Georgia are liable for

infringement of the '547 and '970 patents. (4840 Am. Compl. ¶¶ 7–8; 6048 Compl. ¶¶ 7–8.) Shaw sells various glueless laminate products throughout the United States. (Decl. of David Wilkerson dated January 13, 2003 ("Wilkerson Decl.") ¶¶ 4–6.) Shaw's corporate offices are located in Dalton, Georgia and any employees with material knowledge about Shaw's financial, marketing, sales, distribution, manufacturing, or product design and engineering as it relates to Shaw's glueless flooring products live and work in Georgia. (Wilkerson Decl. ¶ 3.) In addition, any documents relating to these products or their sales are also located in Georgia. (Wilkerson Decl. ¶ 3.) Some of the products that Shaw sells are imported from abroad, while others are purchased from Witex, pursuant to a resell agreement. (Wilkerson Decl. ¶ 10.) Shaw also manufactures its own glueless laminated products in a facility located in Ringgold, Georgia. (Wilkerson Decl. ¶ 5.)

Shaw and Witex are competitors with the Berry defendants in the market for glueless mechanical-locking floor products and are not affiliated with each other. (Clerk Decl. ¶ 12; Biedermann Aff. ¶ 8; Wilkerson Decl. ¶ 9.)

On June 24, 2002 the plaintiffs filed their complaint in the 4840 action, alleging infringement of the '547 patent by Shaw, Witex and Armstrong. On July 29, 2002, Alloc and Berry Finance filed a declaratory judgment action in the Eastern District of Wisconsin against Pergo, seeking a declaration that the mechanically locking products that it manufactures and sells to Armstrong, and which were the subject of the 4840 action brought in New York against Armstrong, Witex and Shaw, did not infringe the '547 patent held by Pergo and that the '547 patent was invalid. (Declaratory J. Compl. ¶¶ 8, 9, 11–14.) Alloc and Berry Finance brought the declaratory judgment action in reasonable apprehension that they would be sued by Pergo,

a fear resulting from the fact that Pergo had sued Alloc's customer, Armstrong. (*Id.*)

On August 2, 2002, four days after Alloc and Berry Finance filed the declaratory judgment action in Wisconsin, Pergo filed an Amended Complaint in the 4840 action, adding Alloc and Berry Finance as defendants. (4840 Am. Compl. ¶¶ 3,5.) On August 13, 2002, Pergo filed the 6408 action, alleging infringement of the '970 patent by the Berry defendants and Shaw and Witex. (6408 Compl. ¶¶ 3–5, 7–8.)

Subsequently, in the Wisconsin action, Alloc and Berry Finance filed a motion seeking leave to file an amended complaint, adding the '970 patent as a subject of the declaratory judgment, and a motion seeking leave to file a second amended complaint substituting Berry Wood SA, as a plaintiff, for Berry Finance. Both motions were granted. (*See* Order dated Oct. 4, 2002 (First Am. Compl.); Order dated Dec. 12, 2002 (Second Am. Compl.).)

The Berry defendants and Shaw and Witex have now moved first to sever the claims brought against them into two lawsuits, and second to transfer the resulting actions against the Berry defendants to the Eastern District of Wisconsin and the resulting action against Shaw and Witex to the Northern District of Georgia.

The Berry defendants contend that there is no connection between the claims raised against them and the claims raised against Shaw and Witex. They have argued that the alleged acts of infringement relate to different products manufactured by the two sets of defendants and that because the Berry defendants and Shaw and Witex are competitors in the market for laminate panels, any infringement must necessarily involve separate transactions and occurrences. Moreover, the Berry defendants argue that since Alloc, an indirect subsidiary of Berry Finance, is headquar-

tered in Wisconsin, the vast majority of evidence and witnesses are located in Wisconsin, and the claims against them should be transferred to the Eastern District of Wisconsin, which is also where Alloc filed its declaratory judgment action seeking a declaration that Alloc had not infringed either the '547 or '970 patents. In the alternative, Alloc has moved to stay or dismiss the claims against it, in light of the declaratory judgment action pending in Wisconsin.

The motion by Shaw mirrors that of the Berry defendants. Shaw argues that Shaw and Witex have no relationship to the Berry defendants, other than as competitors, and that the transactions that give rise to the claims against Shaw and Witex are unrelated to the claims raised against the Berry defendants. Shaw also argues that because Shaw and Witex are both corporations headquartered in Georgia and because all of the relevant evidence and witnesses related to any alleged infringement by Shaw and Witex are located in Georgia, the claims against Shaw and Witex should be transferred to the Northern District of Georgia.

Finally, both the Berry defendants and Shaw argue that there is no connection between the claims raised in these two infringement actions or the parties in the actions to New York, beyond the fact that some of the allegedly infringing products are sold in New York, and that those sales are an insufficient basis to keep any of the claims in the Southern District of New York.

Pergo argues in opposition to these motions to sever and transfer that principles of judicial economy and efficiency counsel in favor of consolidating the claims against the Berry defendants and Shaw and Witex and in favor of keeping the actions in the Southern District of New York. Specifically, Pergo argues that there is added convenience from being able to hold consolidated *Markman* hearings in one Court, from Pergo's ability to avoid inconsistent judgments in related litigation occurring in different jurisdictions, and from being able to have witnesses from various international locations travel to New York, which Pergo contends is a centrally convenient location for the plaintiffs, the plaintiffs' witnesses, and the defendants.

### B.

■ Fed.R.Civ.P. 20(a) provides the relevant test for determining whether claims and parties are properly joined in one lawsuit. Rule 20(a) provides in relevant part:

All persons … may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

The plain text of the rule makes clear that defendants may be properly joined in an action if (1) the defendants are jointly and severally liable under the claims asserted by the plaintiffs; or (2) the claims for relief by the plaintiffs arise out of the same transaction or occurrence, or series of transactions or occurrences, and there is a common question of law or fact that will arise in the litigation. Fed.R.Civ.P. 20(a); *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir.1986).

■ Given the record now before the Court, the allegations made by Pergo in both the 4840 action and the 6408 action fail to satisfy either of the two possible bases for joinder under Rule 20(a), and consequently, the claims against the Berry defendants should be severed from the claims asserted against Shaw and Witex. First, there is no allegation that with re-

spect to either the '970 or '547 patent that the Berry defendants are jointly and severally liable with Shaw and Witex for any alleged infringement. Second, there is no allegation that any alleged infringement by the Berry defendants is any way related to the alleged infringement by Shaw and Witex, and therefore, there is no allegation that the actions of both sets of defendants arise out of the same transaction or series of transactions.

■ The Berry defendants are competitors of Shaw and Witex and there are no allegations of any cooperative or collusive relationship between the two sets of defendants. All Pergo has alleged is that the Berry defendants manufacture and sell flooring tiles that infringe the '547 and '970 patents and that Shaw and Witex also sell and manufacture other flooring tiles that infringe those same patents owned by Pergo. The only connection between the two sets of defendants is that they may have infringed the same patents owned by Pergo. However, the fact that two parties may manufacture or sell similar products, and that these sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a). *See, e.g., Androphy v. Smith & Nephew, Inc.,* 31 F.Supp.2d 620, 623 (N.D.Ill.1998)(find-

ing joinder of defendant companies selling different products in competition with each other impermissible, notwithstanding alleged infringement of same patents); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 564 F.Supp. 1358, 1370–71 (D.Del. 1983) ("Allegations of infringement against two unrelated parties based on different acts do not arise from the same transaction."); *New Jersey Machine, Inc. v. Alford Indus. Inc.,* No. 89 Civ. 1879, 1991 WL 340196, at *1 (D.N.J. Oct. 7, 1991)("Infringement of the same patent by different machines and parties does not constitute the same transaction or occurrence to justify joinder . . ."), *aff'd,* 983 F.2d 1087 (Fed. Cir.1992).[4] Consequently, Pergo has failed to satisfy either of the tests for permissive joinder under the Rule 20(a) for the claims asserted against the two sets of defendants in this action, and the claims against the Berry defendants are severed from the claims against Shaw and Witex.[5] *See United States of Am. ex rel. North Santiam Watershed Council v. Kinross Gold USA, Inc.,* No. 96 Civ. 3673, 1998 WL 118176, at *2 (N.D.Cal.1998).

### B.

■ Pursuant to 28 U.S.C. § 1404(a), the Berry defendants have also moved to have the claims against them transferred

---

4. Pergo's argument that *New Jersey Machine* provides support for the joinder of the Berry defendants and Shaw and Witex in a single action is baseless. Not only did the Court in *New Jersey Machine* deny the motion for permissive joinder of the additional unrelated defendants, but it also based its decision to deny joinder on the fact that the defendants were unrelated competitors who made different products. *See* 1991 WL 340196, at *2. Those factors are clearly present here, because Pergo has failed even to allege that the Berry defendants are related to Shaw and Witex or that their products share any similarity beyond the fact that they are glueless, locking laminate floor tiles and because the

two sets of defendants are market competitors.

5. Pergo's argument that Shaw's motion to sever is procedurally improper because it violated the terms of this Court's order requiring the submission of consolidated motions is frivolous. The Court's prior order simply required that the defendants make any arguments with respect to the '547 and '970 patent in the same motion. The Court did not require that all defendants to make the same motions as all other defendants. Each defendant was free to join, or not to join, any motion made by any other defendant.

to the Eastern District of Wisconsin, and Shaw has moved to transfer the claims against Shaw and Witex to the Northern District of Georgia.[6]

■ Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In ruling on a motion to transfer, the court should consider both the interest of the litigants and the public interest. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Jasol Carpet, Inc. v. Patcraft Comm. Carpet, Inc.*, No. 96 Civ. 3064, 1997 WL 97831, at *3 (S.D.N.Y. Mar.6, 1997).

■ The interest of the litigants includes the plaintiffs' initial choice of forum, the convenience of the parties and the witnesses, the relative ease of access to sources of proof, the availability of compulsory process for the attendance of witnesses, the location of relevant documents and other tangible evidence, questions as to the enforceability of a judgment if one is obtained, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839; *see also Red Bull Assoc. v. Best Western Int'l, Inc.*, 862 F.2d 963, 966–67 (2d Cir.1988). The public interest includes administrative difficulties that follow from court congestion, a local interest in having localized controversies decided at home, and the appropriateness of having the trial of an action in a forum that is at home with the state law that must govern the action. *See Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839. The party seeking the transfer bears the

burden of demonstrating that the factors weigh in favor a change in venue. *See Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir.1978). The plaintiff's forum choice should not be disturbed unless the balance of factors tips heavily in favor of a transfer. *Jasol Carpet*, 1997 WL 97831, at *3.

■ In this case the balance of the factors clearly tips in favor of transferring the claims against the Berry defendants to the Eastern District of Wisconsin and the claims against Shaw and Witex to the Northern District of Georgia.

The private interest factors support transfer. First, the operative facts underlying the claims raised by the plaintiffs have no connection to the Southern District of New York. None of the defendants have their headquarters or principal place of business in New York, and it is clear that the operative facts relating to any alleged infringement would be found at the defendants' headquarters, because that is where the allegedly infringing products are developed, manufactured, and distributed. *See Lighting World, Inc. v. Birchwood Lighting, Inc.*, No. 01 Civ. 4751, 2001 WL 1242277, at *4 (S.D.N.Y. Oct.16, 2001). With respect to the claims raised against the Berry defendants, all of the facts, witnesses and relevant documents related to the manufacture, sale and distribution of the allegedly infringing products are located primarily in Wisconsin, where Alloc is headquartered and from where Alloc manages its customer relationship with Armstrong, or abroad, but not in New York. With respect to the claims raised against Shaw and Witex, all of the facts, witnesses and documents are located in Georgia and not in New York. In addition, given that

---

**6.** Although Berry Finance has moved to dismiss the claims brought against it on the basis of a lack of personal jurisdiction, this Court may decide whether to transfer claims raised against Berry Finance to the Eastern District of Wisconsin without first resolving the issue of the existence of personal jurisdiction. *See Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir.2001).

the nexus of the allegedly infringing activity is outside New York, the sales of the defendants' products in New York, is insufficient to find that the operative facts in this litigation are connected to New York. *See Coloplast A/S v. Amoena Corp.*, No. 92 Civ. 3432, 1992 WL 346359, at *2 (S.D.N.Y. Nov.18, 1992). Under these circumstances, the operative facts favor the transfer the case against the Berry defendants to the Eastern District of Wisconsin and the case against Shaw and Witex to the Northern District of Georgia. *See id.; Lighting World*, 2001 WL 1242277, at *4.

Second, convenience of the parties and the witnesses favors transfer. The Berry defendants argue persuasively that because Alloc has its headquarters in Wisconsin and Armstrong has its headquarters in Pennsylvania and because any witnesses with knowledge of the alleged infringement would be located in Wisconsin, the claims against them should be transferred to the Eastern District of Wisconsin. Shaw has also correctly pointed out that because Shaw and Witex are headquartered in Georgia and because any witnesses would be in Georgia, the claims against Shaw and Witex should be transferred to the Northern District of Georgia.

Pergo's arguments of convenience are unpersuasive. Neither Pergo, Inc. nor Pergo (Europe) AB is a New York corporation, nor does either company have its principal place of business in New York. Pergo's arguments that New York is centrally located in relation to the headquarters of the various defendants, provides a convenient hub for witnesses traveling from Europe, and is convenient for Pergo because its lawyers are located in New York are simply not relevant factors to consider in weighing the convenience to the parties. *See Olympia Group v. Cooper Indus.*, No. 00 Civ. 7367, No.2001 WL 506219, at *2 (S.D.N.Y. May 14, 2001)

(finding convenience to party's lawyers not relevant consideration for § 1404(a) analysis); *Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 Civ. 740, 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999) (finding no additional inconvenience from having foreign witnesses take additional flights within the United States from New York to transferee district); *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F.Supp.2d 459, 465 (S.D.N.Y.2002) (same). The relevant consideration for the purposes of convenience is the location of the party and nonparty witnesses, which Pergo does not even attempt to allege are located in New York. *See id.; Bionx Implants*, 1999 WL 342306, at *3.

Third, for many of the reasons already stated, the location of relevant documents and other tangible evidence, and the relative ease of access to sources of proof favors transfer. The documents and relevant proof with respect to the Berry defendants is located primarily in Wisconsin and the documents and relevant proof with respect to Shaw and Witex is located in Georgia.

Fourth, the availability of compulsory process for the attendance of witnesses favors transfer, because there is no indication, and Pergo does not dispute, that there are any relevant witnesses within the subpoena power of this District.

Fifth, under the circumstances of this case, the plaintiffs' choice of forum should not be granted much weight. "Although [the] plaintiff's choice of forum is ordinarily entitled to 'substantial consideration,' this choice is accorded less weight where the case's operative facts have little or no connection with the transferor forum." *Lighting World*, 2001 WL 1242277, at *4 (collecting cases). "This is particularly the case where [the] plaintiff brings suit outside his home forum." *Id.* In this case, plaintiffs' choice of forum, New York, is not the home district for either Pergo, Inc.

or Pergo (Europe) AB, and the location of the operative facts, as explained above, is not in New York for the claims raised against either the Berry defendants or Shaw and Witex.

Thus, the interests of the parties overwhelmingly favor transfer from the Southern District of New York.

In addition to the fact that the interests of the parties favor transfer, the public interest factors also favor transferring the claims to the Eastern District of Wisconsin and the Northern District of Georgia. The relevant public interests factors for the purposes of this case include the avoidance of the potential for inconsistent judgments and the promotion of judicial economy. *See Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839.

■ With respect to the claims raised by Pergo against the Berry defendants, the existence of a declaratory judgment action pending in the Eastern District of Wisconsin counsels in favor of transferring the claims against the Berry defendants to that court and suggests that such a transfer would promote judicial economy. Alloc has moved, in the alternative, to stay or dismiss the claims against it, on the basis of the declaratory judgment action currently pending in the Eastern District of Wisconsin. The arguments raised by Alloc as to why the declaratory judgment action was "first filed" in comparison to the cases in this Court suggests that a transfer of the claims against the Berry defendants is in the public interest. Traditionally, under the "first filed" rule, when there are two actions involving the same parties pending concurrently in different districts, the "first filed" case proceeds, and the second-filed case is either dismissed or stayed. *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 54 (S.D.N.Y.2001). The "first filed" rule is based on principles of judicial economy, comity, and an interest in avoiding duplicative litigation. *Id.; First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 80 (2d Cir.1989); *Regions Bank v. Wieder & Mastroianni, P.C.,* 170 F.Supp.2d 436, 439 (S.D.N.Y. 2001). Therefore, transferring a case to another district where a "first filed" case is pending would also promote judicial economy, by permitting consolidated adjudication of similar claims against similar parties, and achieves the same goals as a dismissal or stay of the second action.

■ The declaratory judgment action filed in the Eastern District of Wisconsin against Pergo has priority in terms of filing date with respect to both the 4840 and 6408 actions filed in this Court. Although the plaintiffs filed the 4840 action on June 24, 2002 in this Court, Pergo sought to amend its complaint to add Berry Finance and Alloc as defendants on July 29, 2002. However, prior to July 29, on July 25, 2002, Alloc and Berry Finance had filed the declaratory judgment action in the Eastern District of Wisconsin against Pergo. Alloc and Berry Finance's declaratory judgment action was "first filed" in comparison to Pergo's claims against those parties in the 4840 action, because the 4840 action was filed against Alloc and Berry Finance after they had initiated the declaratory judgment action.[7]

7. Pergo's argument that the addition of Alloc and Berry Finance as defendants to the 4840 action relates back to the original date of the Complaint in that action, June 24, 2002, and therefore predates the filing of the declaratory judgment action in Wisconsin is misplaced. When adding additional defendants, Fed R. Civ. P. 15 provides that relation back is proper only if (1) the claim raised against the defendants arose out of the same conduct set forth or attempted to be set forth in the original pleading and (2) the parties sought to be brought into the action had notice of the original action *and* knew or should have known, that but for some mistake concerning identity, they would have been parties to the original action. Fed.R.Civ.P. 15(c)(3). Pergo cannot satisfy Rule 15(c)(3). Pergo in its re-

In addition, the declaratory judgment action is also "first filed" in comparison to the 6408 action filed by Pergo on August 13, 2003 alleging infringement of the '970 patent. On December 12, 2002, the complaint in the Wisconsin action was amended to seek relief with respect to the '970 patent. However, the amendment to Wisconsin action relates back to the date of the filing of the original complaint, July 25, 2002. Fed.R.Civ.P. 15(c)(2) provides that an amendment relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The conduct alleging Alloc and Berry Finance infringed the '970 patent arose out of the same conduct that allegedly infringed the '547 patent. (*See* 4840 Am. Comp. ¶¶ 9–11; 6408 Am. Compl. ¶¶ 9–11) (alleging manufacture and sale of floor panels infringe Pergo's patents). Consequently, pursuant to Rule 15(c)(2) the amendment relates back to the date of the original complaint July 25, 2002. Because the Wisconsin action had a filing date of July 25, 2002, it is "first filed" in comparison to both of the New York actions. Thus, transferring the claims against the Berry defendants to the Eastern District of Wisconsin would promote judicial economy, by permitting joint adjudication of all of the infringement issues with respect to the Berry defendants.

With respect to the claims against Shaw and Witex there is no potential savings of judicial economy that would result from transfer to the Northern District of Geor-

gia, since there is no previously pending action in that district. This factor is therefore neutral with respect to the transfer of these claims.

Pergo raises various arguments suggesting that the public interest would not be furthered by transferring the claims against the Berry defendants to the Eastern District of Wisconsin and the claims against Shaw and Witex to the Northern District of Georgia. None of these arguments has merit.

Pergo's main argument is that the transfer of the actions from this Court would result in the possibility of inconsistent judgments. Pergo argues that if the claims against the Berry defendants are transferred to Wisconsin and the claims against Shaw and Witex are transferred to Georgia, Pergo faces the risk of inconsistent judgments. Pergo's apprehension is misplaced, given that the products alleged to have been infringing are not the same and the two sets of defendants are unrelated. The argument that Pergo advances is based on the erroneous assumption that Pergo's interests in the litigation in the two fora are identical; however, given the differences between the products and the two sets of defendants, Pergo's interests will necessarily not be identical. *Cf. SmithKline Beecham Corp. v. Geneva Pharmaceuticals, Inc.,* No. 99 Civ. 2926, 2000 WL 217642, at *1–*2 (E.D.Pa. Feb. 11, 2000) (denying motion to transfer although both cases involved same patent, additional patents were alleged to have been infringed in one action and those patents and issue were not present in the

sponsive papers fails to give any reason why Alloc or Berry Finance knew or should have known that but for a mistake in identity Alloc or Berry Finance would have been sued as defendants. There is no representation that Pergo was confused about the identities of the Berry parties or whom it was suing. Pergo argues instead that this requirement does not

apply in patent cases. This argument is unavailing, given the plain text of Rule 15(c), which creates no exception for patent cases, and the absence of any case authority to support Pergo's position. Thus, Pergo's amendment adding Alloc and Berry Finance does not relate back to the date of the original filing of the 4840 action.

second action). Without ever raising any concerns about the potential for inconsistent judgments, courts consistently deny the joinder of unrelated parties into one action, even where the infringement of the same patent is alleged, and thereby allow for the actions against those defendants to proceed separately. *See, e.g., Androphy,* 31 F.Supp.2d at 623; *New Jersey Machine,* 1991 WL 340196, at *1–*2.

To the extent that Pergo's argument is based on the fact that litigation in two jurisdictions will result in differing interpretations of the '547 and '970 patents, it too is meritless. Patent holders often litigate cases and bring claims alleging infringement of the same patent in multiple jurisdictions against different parties, and they are able to resolve discrepancies, if they exist, by appealing those decisions to the Court of Appeals for the Federal Circuit. *See, e.g., RF Delaware, Inc. v. Pacific Keystone Techs., Inc.,* No. 02–1508, 2003 WL 1906785, at *2 (Fed.Cir. April 21, 2003) (noting that multiple district courts had conducted claim construction analysis on identical patent owned by the plaintiff, because the plaintiff had brought suit in two jurisdictions, and the plaintiff had appealed one such interpretation); *see also* 17 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4104 (2d ed.1987) (noting that Federal Circuit was created specifically to achieve consistency in area of patent law and to resolve conflicts in lower courts).

In addition, as explained above, Alloc and Berry Wood have a declaratory judgment action pending in Wisconsin that involves the same issues of infringement that are being litigating against the Berry defendants in this action. The interest in avoiding inconsistent judgments is certainly greater as between the Wisconsin declaratory judgment action and the claims against the Berry defendants in this case, than between any action in Georgia and any action in Wisconsin brought by Pergo that involves different products and different infringement issues. *Compare Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 55–56 (D.D.C.2000); *Coregis Ins. Co. v. Montelepre,* No. 98 Civ. 2167, 1999 WL 236616, at *1–*3 (E.D.La. April 19, 1999); *Vortekx, Inc. v. IAS Communications, Inc.,* 72 F.Supp.2d 638, 640 (N.D.W.Va.1999) *with SmithKline Beecham Corp.,* 2000 WL 217642, *1–*2 (discounting argument concerning potential for risk of inconsistent judgment where patent issues involving parties were dissimilar as between two jurisdictions). Consequently, the Berry defendants run a greater and more plausible risk of inconsistent judgments if the claims against them are not transferred to Wisconsin, and litigated along with the declaratory judgment action. *See Reiffin,* 104 F.Supp.2d at 55–56 (D.D.C.2000) (granting motion to transfer venue where parties and patents were identical in two actions and failure to transfer raised risk of inconsistent judgments).

Thus, the public interest factors favor the transfer of the claims against the Berry defendants to the Eastern District of Wisconsin, because such a transfer promotes judicial economy, by allowing the declaratory judgment action to proceed alongside the claims raised by Pergo in this Court. There is no persuasive countervailing public interest advanced by Pergo that counsels against transferring the claims against the Berry defendants to the Eastern District of Wisconsin or the claims against Shaw and Witex to the Northern District of Georgia, since there is no realistic danger of inconsistent judgments.

Given that the interests of the parties and the public interest tips decidedly in favor of transfer, the motions of the Berry defendants and Shaw to transfer pursuant to § 1404(a) are granted.

## II.

There are several additional motions that have been filed by one or more of the Berry defendants. Because the motions to sever and transfer are being granted, it is appropriate for the transferee court to consider the merits of the remaining motions. Since these motions are critical to the disposition of the case, they should be decided by the transferee court in the first instance. *See Lyon v. Cornell Univ.,* 97 Civ. 7070, 1998 WL 226193, at *2 (S.D.N.Y. May 4, 1998) (collecting cases). Consequently, it is unnecessary to decide the remaining motions and they are transferred with the claims against the Berry defendants to the Eastern District of Wisconsin.

## CONCLUSION

For the reasons explained above, it is hereby ordered that:

1. The claims in the 4840 and 6408 actions against the defendants Berry Finance, Alloc and Armstrong are severed from the claims against the defendants Shaw and Witex.

2. The claims in the 4840 and 6408 actions against the defendants Berry Finance, Alloc and Armstrong are transferred to the Eastern District of Wisconsin.

3. The claims in the 4840 and 6408 actions against the defendants Shaw and Witex are transferred to the Northern District of Georgia.

4. The remaining motions by one or more of the Berry defendants are transferred together with the claims against the Berry defendants to the Eastern District of Wisconsin.

5. The Clerk is directed to transfer the cases in accordance with this decision and to close these cases on the docket of this Court.

**SO ORDERED.**